UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MASSMARINER SA, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 2:16CV_____ |
| | § | |
| v. | § | JUDGE_____ |
| | § | |
| QUADRA COMMODITIES SA | § | MAG. JUDGE _____ |
| AND QC MATILDE LTD., | § | |
| | § | IN ADMIRALTY |
| Defendants. | § | |

## ORIGINAL VERIFIED COMPLAINT

Plaintiff MASSMARINER SA ("MASSMARINER" or "Plaintiff"), by its undersigned counsel, as and for its Verified Complaint against the Defendants QUADRA COMMODITIES SA ("QUADRA") and QC MATILDE LTD. ("QC") (collectively "Defendants"), avers and pleads as follows:

### I. JURISDICTION, VENUE AND PARTIES

1. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves claims for the breach of maritime contracts – *i.e.* time charter party. This case also falls under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333, and is brought under the provision of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims.

2. At all times material hereto, Plaintiff MASSMARINER was and still is a foreign business entity organized under the laws of a foreign country.

3. At all times material hereto, Defendant QUADRA was and still is a foreign business entity organized under the laws of a foreign country.

1

4. At all times material hereto, Defendant QC was and still is a foreign business entity organized under the laws of a foreign country.

5. The jurisdiction of this Honorable Court is founded on the presence within the District of an asset of the Defendant, specifically the M/V QC MATILDE, IMO No. 9244831, that may be attached by process of maritime attachment and garnishment under the provisions of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, as pled in Section IV of this Verified Complaint.

## II.  THE SUBSTANTIVE CLAIMS

6. Defendant QUADRA was the time charterer of the M/V LUZERN ("the Vessel") by virtue of an amended New York Produce Exchange '93 time charter party agreement with Plaintiff MASSMARINER dated February 13, 2015.  A copy of the charter party agreement is attached hereto as **Exhibit 1**.

7. Pursuant to the terms of the agreement, MASSMARINER chartered the Vessel to QUADRA for ". . . *a period of about 10 months to about 15 months, in charterers' option, about meaning +/- 15 days.*"  *Id.*

8. The charter party agreement is a maritime contract.

9. The parties further agreed to the arbitration of disputes arising out of the maritime contract in London with English law to apply.  *Id.*, at Clause 45.

10. During the course of the performance of the charter party, the Vessel loaded a cargo of wheat at Constanza for discharge in Djibouti.  En route to the port of discharge, QUADRA arranged for the supply of 425 metric tons of IFO ("bunkers") to the vessel.

11. The bunkers were analysed by Messrs. SeaTec U.K. Ltd. and it was determined that the bunkers which had been provided to the Vessel were off-specification. The fact that the bunkers were off-specification was not disputed by Charterers, Defendant QUADRA.

12. After discharge of the cargo of wheat, QUADRA purported to redeliver the Vessel at DOP[1] Djibouti at 10:24 LT on 17 April 2016. The purported redelivery was a breach of the charter party agreement due to QUADRA's off-specification bunkers remaining on board.

13. Instead of the Vessel being able to immediately proceed to her next fixture, which would have seen the Vessel steam directly from Djibouti to East Coast South America, a voyage to River Parana / San Lorenzo), the Vessel was required to deviate to Fujairah (*i.e.* go the opposite direction) in order to follow QUADRA's orders to de-bunker the off-specification bunkers and stem on-specification bunkers. The distance from Djibouti to Fujairah is 1,562 nautical miles.

14. At QUADRA's instruction, de-bunkering and replenishment took place at Fujairah between April 22 – 27, 2016. Thereafter the Vessel departed Fujairah.

15. As a result of the breach of the charter party, Charterers remain liable for deviation costs being (a) hire at either the market rate or the Charterparty rate and (b) bunkers at the Charterparty rate.

16. Pursuant to MASSMARINER's final hire statement, a balance of hire is due to Owners in the amount of USD 221,259.17. A copy of the hire statement is attached hereto as **Exhibit 2**.

17. In breach of the terms of the February 13, 2015 charter party agreement, Defendant QUADRA has refused, neglected, and/or failed to pay (or provide security for)

---

[1] Dropping Outward Pilot.

MASSMARINER's principal claim and/or damages totaling USD 221,259.17, which is due and owing to the Plaintiff under the charter party.

18. Pursuant to the terms of the charter party, disputes between the parties are to be submitted to arbitration in London with English law to apply.  Plaintiff commenced arbitration against QUADRA and served its Claim Submissions on or about August 19, 2016.  A copy of the Claim Submissions are attached hereto as **Exhibit 3**.

19. This action is an ancillary proceeding, brought in order to obtain jurisdiction over Defendant QUADRA and to obtain security for Plaintiff's claims in aid of the London arbitration proceedings.

20. Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English Law.  Section 63 of the English Arbitration Act of 1996 specifically allows for recovery of these items as part of an award in favor of the prevailing party.

21. As best as can now be estimated, Plaintiff MASSMARINER expects to recover the following amounts in London Arbitration from Defendant QUADRA:

| | | |
|---|---|---|
| A. | Principal Claim: | $221,259.17 |
| B. | Estimated interest on Principal Claim:<br>*One year at 6.0%, compounded quarterly* | $13,275.55 |
| C. | Recoverable Legal Fees and Costs: | $100,000.00 |
| D. | **TOTAL:** | **$334,534.72** |

22. Therefore, MASSMARINER's total claim for breach of the maritime contract against Defendant QUADRA is in the aggregate **$334,534.72**.

### III.  APPLICATION FOR ATTACHMENT UNDER
### SUPPLEMENTAL ADMIRALTY RULE B

23. The Defendants are not present and cannot be found in the District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Law Claims. *See* Attorney Declaration of Sean D. Kennedy attached hereto as **Exhibit 4**.  Nevertheless, Defendants have within the District tangible or intangible personal property in the hands of parties who may be named garnishees in the process of maritime attachment and garnishment consisting of debts, credits, or effects.

24. More particularly the M/V QC MATILDE, bearing IMO No. 9244831 and international call sign V7QD2, a bulk carrier owned by Defendants, is currently located within the Eastern District of Louisiana and the Mississippi River, and is expected to berth at Enterprise Causeway berth at the CHS Harvest States Terminal at mile marker 62.

25. QC is listed as the "registered owner" of the M/V QC MATILDE, however the Vessel is actually and beneficially owned by Defendant QUADRA.  On its own corporate website, www.quadra.com, QUADRA asserts and confirms that the "QC" in the vessel name represents 'Quadra Commodities' ownership of vessels with such markings.  A copy of the QUADRA website is attached hereto as **Exhibit 5**.

26. The "QC" fleet of vessels owned by QUADRA includes not only the QC MATILDE, but also the QC ATHINA.  The vessels share all of the same owners, contact details, and commercial and technical management.  *See* **Exhibit 5** and a copy of the vessel Equasis Reports, attached as **Exhibit 6**.

27. The vessels are Marshall Islands flagged and subject to a joint loan facility as part of each vessel's First Preferred Mortgage, that show another QUADRA company, QC Shipping Investments Ltd. as the guarantor of the loan.  Mr. Piero (a/k/a Peo) Ravano, the CEO of

5

QUADRA is listed as the notice individual for any communications to QC Athina Ltd., QC Matilde Ltd, and/or QC Shipping Investments Ltd.  See an Excerpt from the Mortgage Loan Facility attached hereto as **Exhibit 7**.[2]

28.     Notwithstanding their formal separate incorporation, the Defendants QUADRA and QC are in actual fact a single business entity pursuing functionally differentiated business objectives through nominally separate business structures, but always subject to the command and control of QUADRA.

29.     Though Defendants comprise nominally separate corporate business / legal entities, their ownership and control is so intertwined and fused that they are distinct from one another merely as a matter of formality.  As QUADRA openly and freely admits, the M/V QC MATILDE is the property of QUADRA.  See **Exhibit 5**.

30.     Alternatively, Defendants having operated, at all relevant times, as a single enterprise, and being the alter ego of each other in the circumstances set in the above and foregoing Original Verified Complaint, it would be fair and equitable for any asset of this enterprise to be subject to the claims of creditors of the enterprise, such as Plaintiff, and for any such assets to be attached as security for Plaintiff's maritime claims.

31.     Defendants cannot be found within the Eastern District of Louisiana for the purposes of Rule B of the Admiralty Rules.  See **Exhibit 4**.

**WHEREFORE PREMISES CONSIDERED**, Plaintiff prays as follows:

A.      That process in due form of law, according to the practice of this Honorable Court in matters of admiralty and maritime jurisdiction issue against Defendants and said Defendants be cited to appear and answer the allegations of this Complaint;

---

[2] The entire mortgage and loan facility have not been produced herein due to size of approximately 170 pages. Plaintiff would be pleased to provide a complete copy should the Court wish to review same.

B.	That if Defendants cannot be found within this district, then all of their respective property within this district, specifically the M/V QC MATILDE, No. 9244831 and international call sign V7QD2, be attached and seized pursuant to Supplemental Admiralty Rule B for Certain Admiralty and Maritime Claims;

C.	That a judgment be entered against the Defendants in the sum of **$334,534.72** and the proceeds of the assets attached be applied in satisfaction thereof;

D.	That the Court grant such other and further relief as it deems, just, equitable and proper.

Respectfully Submitted,

Dated:	October 25, 2016	CHALOS & CO., P.C.
	Houston, Texas

By:	/s/ Sean D. Kennedy
	Sean D. Kennedy
	LA Bar No. 31809
	George A. Gaitas
	LA Bar No. 05879
	Briton P. Sparkman
	(*pro hac vice* application forthcoming)
	7210 Tickner Street
	Houston, TX 77055
	PH:  (713) 574-9582
	FX:  (866) 702-4577

	*Attorneys for Plaintiff*
	*Massmariner SA*